UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA BROOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:22-CV-01203-JAR |
| vs. | ) |
| | ) |
| SERTA SIMMONS BEDDING, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion to dismiss filed by Defendant Serta Simmons Bedding (Doc. 42) in this employment discrimination case. For the reasons discussed below, the motion will be granted in part and denied in part.

**BACKGROUND**

Plaintiff Joshua Brooks began working for Defendant Serta in November 2014 and performed successfully without incident until the time relevant to this case. Though not specifically pleaded in the complaint, the Court notes for context that, in March 2020, COVID-19 was declared a global pandemic, overwhelming hospitals and disrupting businesses worldwide. The first vaccine was approved in December 2020, and many employers adopted vaccine mandates in an effort to restore operations while ensuring worker safety. As relevant here, some COVID vaccines were developed through scientific research using human cell lines derived from fetal tissue harvested from two abortions performed over forty years ago.[1]

---

[1] Zimmerman, Richard K., *Helping patients with ethical concerns about COVID-19 vaccines in light of fetal cell lines used in some COVID-19 vaccines*, VACCINE, Vol. 39, Issue 31, June 15, 2021, at 4242-44. [https://perma.cc/Q2N5-UHJ9]

1

On September 9, 2021, President Biden announced that the Department of Labor would issue an emergency rule requiring employers with over 100 employees to ensure that their workers were either vaccinated or testing weekly.[2] Defendant Serta instituted a vaccine mandate for its employees around that time. On October 7, 2021, Plaintiff Brooks submitted a request for accommodation exempting him from the vaccine mandate based on his Christian religious belief that receiving the vaccine would make him complicit in abortion. After a month with no response, on November 1, Brooks inquired again and was granted an "accommodation" in the form of unpaid administrative leave effective November 28. Brooks' position was posted as a vacancy and later filled.

Brooks alleges that his counterparts in other divisions, under other vice-presidents, were permitted to work remotely without the vaccine, while his own supervisor expressed animus toward Christians who refused it. He further alleges that, by the summer of 2022, a co-worker was permitted to work and travel in person without the vaccine.[3]

On December 20, 2021, Brooks filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC) claiming religious discrimination. (Doc. 45 at 3). On June 21, 2022, Brooks filed an amended charge adding a claim of retaliation. (*Id*. at 15-16). On September 19, he received a right-to-sue letter from the MCHR. On October 17, he filed his original petition in state court asserting claims of religious discrimination in the form of disparate treatment and failure to accommodate and a separate claim of retaliation, all under the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.000 *et seq*. On November 10, Serta removed the case to this

---

[2] *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 114-115 (2022).

[3] The Supreme Court stayed the OSHA rule in January 2022. *Id*.

Court and shortly thereafter filed a motion to dismiss (Doc. 10), which was mooted by Brooks' filing of the operative amended complaint on November 18 asserting claims of failure to accommodate (count I) and retaliation (count II). (Doc. 12). In each count, Brooks asserts that he was actually or constructively discharged in that he was removed from the payroll without benefits and later replaced, forcing him to find work elsewhere. In January 2023, the case was stayed due to Serta's Chapter 11 bankruptcy. (Doc. 19-20). The stay was lifted in December 2024 (Doc. 38), and Serta filed the present motion to dismiss on January 7, 2025.

In support of its motion, Serta first contends that Brooks failed to exhaust administrative remedies in that his MCHR charges did not allege constructive discharge and did not preserve a colorable claim of retaliation. On the merits, Serta argues that (1) Brooks' pleadings are insufficient as to whether other unvaccinated employees were similarly situated; (2) a request for accommodation is not a protected activity under Missouri law, and there was no retaliatory event after he filed his initial MCHR charge; and (3) Brooks fails to plead facts demonstrating a constructive discharge.

## LEGAL STANDARDS

**Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqubal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering a Rule 12(b)(6) motion to dismiss, the court must accept the allegations contained in the complaint as true, and all reasonable inferences from the

3

complaint must be drawn in favor of the nonmoving party. *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024). Legal conclusions or formulaic recitations of the elements of a cause of action do not suffice. *DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024).

Review of the complaint on a motion to dismiss is a context-specific task that requires the court to draw on its judicial experience and common sense. *Norfolk & Dedham Mut. Fire Ins. Co. v. Rogers Mfg. Corp.*, 122 F.4th 312, 315 (8th Cir. 2024) (citing *Iqbal*, 556 U.S. at 679). A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.*

**Administrative Exhaustion**

In cases invoking diversity jurisdiction, district courts apply the substantive law of the forum state, including state law exhaustion requirements. *White v. Lavigne*, 741 F.2d 229, 230 (8th Cir. 1984) (reasoning that diversity should not affect the legal burdens that a state court would impose); *Schmit v. Trimac Transportation Inc*, No. 5:23-CV-05014-CBK, 2023 WL 3979023, at *4 (D.S.D. June 13, 2023) (same, citing *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1050 (11th Cir. 2020)).

To exhaust administrative remedies under the MHRA, a claimant must give notice of all claims of discrimination in the administrative complaint. *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 594 (Mo. 2013). Administrative complaints are interpreted liberally to advance the remedial purposes of legislation prohibiting unlawful employment practices. *Id.* Thus, "administrative remedies are deemed exhausted as to all incidents of discrimination that are likely or reasonably related to the allegations in the administrative charge." *Id.* The "scope of the

civil suit may be as broad as the scope of the administrative investigation [that] could reasonably be expected to grow out of the charge of discrimination." *Id.*

## DISCUSSION

In this diversity case, the Court primarily applies Missouri law but may also apply federal employment discrimination law to the extent federal law is applicable and authoritative under the MHRA. *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1019 (8th Cir. 2019).

**Failure to Accommodate (Count I)**

In Count I of his complaint, Brooks pleads that Serta refused to grant him the reasonable accommodation of working remotely without the vaccine, as his colleagues were permitted to do, and instead Serta constructively discharged him by placing him on unpaid administrative leave without benefits. In its motion to dismiss on this count, Serta argues that, to the extent Brooks alleges that he was discharged, he failed to exhaust his administrative remedies by characterizing the action as such in his MCHR charges. The Court does not agree.

Although constructive discharge is a "discrete act" of discrimination, and it is not reasonable to expect the investigating agency to look for and investigate discrete adverse actions not mentioned in the administrative charge, *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080-81 (8th Cir. 2021), the Court finds Brooks' MCHR charges here sufficient to give notice of this claim. A person is constructively discharged when an employer deliberately renders an employee's working conditions so intolerable that the employee is compelled to quit his job. *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 501 (Mo. App. E.D. 2013) (where employee was no longer scheduled to work after he declined to violate medical restrictions). The inquiry is whether (1) a reasonable person in the employee's situation would find the working conditions intolerable and (2) the employer intended to force the employee to quit, or the

5

employer could reasonably foresee that its actions would cause the employee to quit. *Id*. Here, Brooks alleged that Serta placed him on unpaid leave without benefits and posted his position. (Doc. 45 at 3). According to the second charge seven months later, he remained suspended without pay at that time. (*Id*. at 16). A reasonable person could interpret these actions and the resulting intolerable conditions – the indefinite loss of income and benefits – as a separation lacking only in formality, forcing Brooks to find other employment. Given these circumstances, the scope of any administrative investigation would likely include whether Brooks was constructively discharged. *Farrow*, 407 S.W.3d at 594. Construing his charges liberally as the standard requires, the Court finds that Brooks has exhausted his administrative remedies on Count I.

On the merits, under the MHRA, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion[.]" Mo. Rev. Stat. § 213.055.1(a)(1). To demonstrate religious discrimination under the MHRA for failure to provide a reasonable accommodation, a plaintiff must show that (1) he has a bona fide religious belief that conflicts with an employment requirement, (2) he informed his employer of his belief, and (3) he suffered an adverse employment action for failing to comply with the requirement. *Donio v. Arch Oncology*, No. 4:23 CV 1506 CDP, 2024 WL 940327, at *4 (E.D. Mo. Mar. 4, 2024) (denying dismissal where the plaintiff was terminated for refusing the COVID vaccine on religious grounds) (citing *Jones v. TEK Industries, Inc.*, 319 F.3d 355 (8th Cir. 2003). For a claim of religious discrimination, a plaintiff must show that (1) he suffered an adverse employment action, (2) the action was taken because of his religion, and (3) he suffered damage as a direct result of that action. *Id*. (citing Mo. Rev. Stat. § 213.111.5 and Mo. Approved Jury

6

Instr. (Civil) 38.06 (8th ed)).

Serta contends that Brooks fails to state a claim because he did not sufficiently allege that his colleagues who were permitted to work remotely without the vaccine were similarly situated because they reported to different vice-presidents, citing *Hooper v. Austin*, No. 4:21-CV-1510 RLW, 2022 WL 16527235, at *4 (E.D. Mo. Oct. 28, 2022). But that case involved claims of race discrimination and disparate treatment invoking the *McDonnell Douglas* burden shifting framework. *Hooper* is inapposite. Brooks does not allege that non-Christians were treated more favorably. His comparator pleadings merely suggest that a reasonable accommodation was available.

Brooks pleads that (1) he had a religious belief that conflicted with Serta's vaccine mandate, (2) he informed Serta of this belief, and (3) he suffered an adverse employment action in that he was constructively discharged or at least suspended without pay and benefits. Suspension without pay and benefits is an adverse action. *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006). Brooks pleads that this adverse action was motivated by his religion. At this stage, the Court must accept this allegation as true.[4]

Consequently, Serta's motion to dismiss Count I will be denied.

**Retaliation (Count II)**

In Count II of the complaint, Brooks pleads that Serta retaliated against him for requesting a religious accommodation and later filing his first MCHR charge. In its motion to dismiss on this count, Serta contends that Brooks failed to exhaust this claim with respect to his

---

[4] Going forward, "constructive discharge in and of itself, without underlying discrimination, is not actionable under the MHRA." *Clark v. AT&T Mobility Servs., L.L.C.*, 623 S.W.3d 197, 209 (Mo. App. W.D. 2021). A plaintiff must show that the protected status was the motivating factor to the adverse action. Mo. Rev. Stat. § 213.010(2).

7

request for accommodation because his second charge mentioned only his first one as the basis for retaliation and not his initial request. Reading the two charges together, the Court finds them sufficient to exhaust Brooks' claim on this count.

On the merits, however, Brooks fails to state a claim of retaliation under Missouri law. To establish a prima facie case for retaliation under the MHRA, a plaintiff must establish that (1) he complained of discrimination or another practice prohibited by the MHRA, (2) the defendant took an adverse action against him, and (3) his complaint was the motivating factor in an adverse action. *Diallo v. Catalent Pharma Sols., LLC*, No. 19-00392-CV-W-ODS, 2020 WL 3105095, at *4 (W.D. Mo. June 11, 2020) (citing *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794 (Mo. App. W.D. 2018). Stated differently, a plaintiff must show a causal connection between his complaint and the adverse action. *Heuton*, 930 F.3d at 1023 (citing the MHRA).

As Brooks concedes, "a mere request for an accommodation does not fall within the plain language" of the MHRA as a protected activity. Mo. Rev. Stat. § 213.070.1(2); *Li Lin v. Ellis*, 594 S.W.3d 238, 244 (Mo. 2020). As such, Serta's response to Brooks' request – placing him on leave – is not a cognizable act of retaliation.

Brooks then points to the filing of his first charge as recognized protected activity, but Serta took no adverse action in response to it.  The only "action" Brooks pleads is Serta's inaction, maintaining the status quo where Brooks was on unpaid leave but his colleagues were permitted to work. "To retaliate is to 'inflict in return,' and retaliation includes 'any act done for the purpose of reprisal that results in damage to the plaintiff.'" *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 751 (Mo. App. E.D. 2020). A plaintiff must show that the complaint was the motivating factor to the adverse action. Mo. Rev. Stat. § 213.010(2). Given the sequence of events here, Brooks cannot claim that Serta retaliated against him for filing his first charge when

8

Serta did nothing in response to it. *See Clark*, 623 S.W.3d at 209 (finding no causal connection where no adverse action occurred *after* plaintiff complained to management).

Consequently, Count II fails to state a claim and will be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Serta's motion to dismiss is **DENIED** as to Count I and **GRANTED** as to Count II. (Doc. 42).

Dated this 14th day of April 2025.

                                                      *John A. Ross*
                                                      JOHN A. ROSS
                                                      UNITED STATES DISTRICT JUDGE